Good morning. Good morning. May it please the court. John Glugoski, Brighetti Glugoski for Plaintiff Taylor and the class. I'm here today to go over about five specific points. One dealing with the fact that we are reviewing a decision on a summary judgment and whether there was a tribal issue of a commute and what are actual duties that have to be performed and how that would be... Well, the arguments that you raise in this case were rejected by the California Court of Appeal in Hernandez v. Packbell, right? That is correct and that was... So how do you distinguish this case from Hernandez? Because we have to apply California law here, right? That is a point I was going to get to and so that was the third one and I'll jump... It's kind of the elephant in the not required to follow intermediate appellate courts if there is a likelihood that the California Supreme Court might go a different way or might not agree. Was there a petition for review in this case? There was, but we don't... What did the California Supreme Court do? They did not grant review, but they gave no reason. So I, nor anyone that I'm aware of, can speculate as to the reason whether... Well, I know, but from the standpoint, if it was so wrong, they do have... When you petition for review, that is the highest court and they can, if they choose, correct it if it's really wrong. So wouldn't you... I guess from the standpoint, I don't think it takes all the wind out of your sails, but I think it gives us additional confidence that that's what the highest court would say. Fair enough. And so I would direct you to 143 of that decision and it talks about plaintiffs object to what they see as importing the federal overt exertion rule into California law. They contend this rule comes from the Reisch v. New York City Transit Authority and that's the second district circuit court. And that was the issue there. They suggested that I was suggesting that it's overt exertion and nothing more. But when they go in and they discuss Augustus a little bit later, they say, indeed the Augustus court defined rest, or not work time, as the and they cite to page 265, thus suggesting a connection between work and exertion. We find nothing in Augustus that is inconsistent with Taylor. So I will admit that they addressed exertion, but our California Supreme Court has explained that work as opposed to rest can come in three forms. Cessation of work, exertion, or activity. And in this particular case, if we look at where we are in terms of this particular program, first of all, when you look at the home program, one of the things that differentiates this case from others is they actually identify traveling from your home to the first job as an actual work activity. And that's set forth right in their own policies. And it doesn't, and Cox attempts to come in and says, well, no, they have to clock in, they have to log in, they have to do all this other work. But if you employees who elect to participate in a home start program can start the shift to, sorry, outlined by local management at his or home, once the technician contacts dispatch, logs on to WFA, reviews the first work order, and or begins the commute in the first work site. Any regular work tasks, an example, traveling to first job, they've identified this as a particular work task. Are you suggesting that's almost like an estoppel since they, Cox has defined that as part of the work task, that the commute home cannot be? That the employer doesn't have the ability to sort of define each segment as it wishes, provided it's not required by statutory law? I'm not necessarily saying that, but certainly an argument could be made there. What I am saying is this, what are we really talking about here? A commute, I think we'd all agree, is we get in our car, if we want to stop at Starbucks, we get a coffee, we drive, we pick up kids, that's fine. Okay, here in the situation is, they're on the program, and again, we have to go election, because I don't think election was ever established anyway, but we, you get in your car, in the van, you do the work at the end of the day, and before you get home, you have to clock out. Now, this program creates a duty at that point. The duty is set forth in, in, in the eight, no. To piggyback on this, do you dispute the fact that the Home Start is a voluntary program? I do. Well, if so, what facts in the record indicate that Coxfield technicians were required to participate in Home Start? Okay, well, this brings me back to the issue of, we are at a summary judgment, and we're reviewing that. So, what's in the evidence that it's anything but a voluntary program? There is 596 people in this position, and that's, I believe, ER 734, the COPE, the Lisa COPE declaration, and she talks about that these documents, the opt-in selection form, where you check the box, are maintained. She went back and located those ones that were kept, where people elected for it, and produced those, and I think it's like 30, 40 people out of 596, and in that declaration, ER 735, she said, in some cases, witness employees did not elect Home Start. They simply did, no, in some cases, where employees did not elect Home Start, they simply did not sign any document at all. Okay, so that brings me to the 50 declarations that I referenced in there. One of the things that you're not going to find in 82% of those is the election document, the check the box, which is the one that says, this is how you go on the program. There are ones where no box is checked, and they go on the program. So, if you're looking at this and trying to evaluate this, if this is voluntary, let's evaluate. If they check the box, it was voluntary. If they didn't check the box, it's voluntary. They knew at some point, even if they didn't check the box, once they started doing it and getting paid, and knowing when they had a clock in and out, they knew at some point that they were in this program. The question is, did they know that they could not participate in the program, which they chose not to. And there's the point. That's why there's a material issue, an issue of material fact. You have to drive your own car, right? I'm sorry? If you don't participate in the program, you can't drive your own car. But there's no evidence to suggest that this is a voluntary program. That's the point. That's what needs to be tried. And at some point, you know, if the policy is this, and I mean, here's the problem, is you have these companies who set up these elaborate policies, these documentations, they get everything signed, the new hire packet, they're maintaining all these records, and then you know what happens? Great firms, great firms like Shepard Mullin go, oh, my God, we don't have the election form for these people, what do we do now? Oh, I know, let's go to 50, less than 10% of the class, and you're talking about wiping out the claims of 596 people on statements made and declarations that, oh, yeah, I understood it was optional. Well, what does optional mean? Okay, I guess optional does not mean optional. Well, I had the option to come here today. I understand that... You really didn't, actually. Well, without consequence, but we all have options in our lives. Everything is an option. I usually have to tell people to talk louder. You can talk a little softer. And I do apologize because, you know, you probably... It's appellate court, not jury. Rudy versus Lojack, you know, Mr. Kaufman and I have dealt with Hernandez. So, you know, this area gets very passionate because one of the things that's frustrating for me is... Let's get legal and not passionate. Okay. And I'm not trying to re-flip, but what do you mean optional stuff? I'm sorry? It just seems... I'm trying to get you to take your best shot at explaining to me why there's really a question of about the extent to which employees understood this program was not optional. Because the only way you can go on this program is by checking the box. Then they say, but if you go on the program... Let me stop you there because I think you're just missing the question. Judge Chen's point, Judge Callahan's point. It's not just checking a box. It's also, in practice, people were doing this day in, day out. They're driving their own car. They're not doing the alternate. Some people are. Most people weren't. So how is it possible that there's a mistake about this or that people didn't understand it was optional, please? Fair enough. Fair enough. Why would there be a form? And I apologize for responding to your question with a question. But the idea is you set up this specific form and say, this is the way you opt into this form. This is the way you elected. Okay. And you get that. And at that point, you must believe I have a choice. Okay. So how do you end up on HomeStart if you've never exercised that election? That cuts against you, in my view. If the employee believed he or she had a choice, whether they check the box or not, but they start doing every single day, day in and day out, their practice and routine, is inconsistent with one of those two options. As long as they know there is an option, it seems to me you lose. What am I missing? There you go. There you go. There's no evidence that any, let's assume the three of your texts, there's no evidence that you got the form saying you have an option to do it. There's no evidence that you got the form. There's no evidence. What there is is declarations after the fact to say when you didn't have any proof to show, you have to establish the option was given to these people. And that's where the missing link is. And it may, at the end of the day, at trial, prove out that, yes, there were. If this option had been given to everyone, you would have 596 forms, and you would see some with checking no, you would see some checking yes. But instead, you don't have that. And what you have, look at the Lisa Cogden. If you could just finish. What do we have? What does the record show? The record shows that you have 596 people. You have at least three or four where no box is checked, and they are on Homestart. You have ones where there are a box checked, and then you have declarations from 50 people with no document whatsoever. What percentage of the 596 did not participate in this program? My understanding from Lisa Copp is 596 is the number of people that were in the program. How many people were not in the program? That number was never just discussed. I do not know that number. Do you want to save any time for rebuttal? Yes, please. Thank you. Well, you're down to 227. Okay. Thank you. Okay. Good morning. Good morning, Your Honors. This is Thomas Kaufman, Shepard Mullen for Cox. You made a comment, Justice Kellyanne, that there's an elephant in the room here, and I think it's actually there's two elephants in the room. Well, let me ask you this. So maybe you want to address the other element might be Alcantara is what you're saying. You know, I don't – and I guess I'll ask counsel for the appellant to think about this before it comes back. Obviously, Hernandez is the highest court that we have in California, and the petition for review was denied. But then you also have Alcantara v. Hobart, which is a Ninth Circuit case, which the district court mentions when doing the Meridian analysis. So I would say that from my perspective, and I only am speaking for myself, I think Hernandez is something I have to take very seriously in terms of what California law, the highest court, what California would do. But I also – I think we would probably all agree that we're bound by our own Ninth Circuit precedent, and so that to me is if Meridian was done with the Ninth Circuit in mind, how does – you know, appellant needs to tell me that was wrong too. Correct. So essentially, I agree with everything you just said, that the only way that counsel could make a persuasive case to depart from either Alcantara or from Hernandez would be to factually distinguish this case in some material way. I don't think anything in the papers factually distinguished Alcantara. Alcantara set forth a gloss of how you decide in cases where people – But that's only – it's only subject to control is what Alcantara deals with, right? That's true. So how does Alcantara answer the question of suffer to permit work? I think that's what he would say. Okay. I think that's a fair point in the sense that – I could be speaking for someone, but – It wasn't expressly addressed in Alcantara. Alcantara did involve people who carried tools and equipment on their trucks, and they make mention of that in passing, that that was part of the record there. So I think that the fact they didn't expressly say, well, this would change the analysis, doesn't alter the fact that people who carry tools and equipment on their truck and bring it home at night, if they have an option to do so, the time is non-compensable. I think the question of suffer to permit to work is addressed definitively in the Hernandez case, though, which is the state court decision that you would be required to follow under In re Watts, 298 F. 3rd, 1077, 1082. It's the Ninth Circuit in 2002. Unless you've found strong evidence, the California Supreme Court would not follow it. And there's absolutely no reason to think the California Supreme Court would not follow it, because if you start at the California Supreme Court authority in Marillion, it sets forth that same test, and it's been carried consistently in the Overturn v. Disney case, in the various district court cases that we've cited have also echoed it. There's no case that says anything that plaintiff's counsel is saying here, that people who have a choice to commute home in a vehicle have to be paid for the time for any reason. Well, is there a California case, though, a California Supreme Court case, that would support the district court's conclusion that the time during which an employee is suffered or permitted to work requires a work-related exertion or the performance of work-related tasks? Do you have a case for that? There's no California Supreme Court case that expressly addresses that issue. There is the general way that you view the interplay of federal and state law, wage and hour law in California. We cited the Huntington Memorial v. Superior Court case. There are many, many times where California says we're different than federal law, and they point to something in a statute. Like, for example, in Murillian, they point it's in the wage order. There's a different definition of hours worked than exists under the FLSA. But generally, as a starting point, you look to the federal law unless there's a difference between California and the federal law. There's no difference that has been identified in California law of suffered and permit to work, what that means, versus what it means under the FLSA. There's this whole control element that we've been talking about that I think is off the table because of Alcantar. That's a uniquely California concept that cuts against the other side. But suffered or permitted to work consistently in the federal law has this exertion notion. Is Hernandez persuasive or controlling? I think Hernandez is controlling unless you find strong evidence that the California Supreme Court would find differently. That's the Ninth Circuit standard of how you look at intermediate California appellate decisions on California state law. So I think unless you have a strong reason to think it's wrong, you have to follow it. I mean, you're supposed to. And none has been provided. What was provided in the papers was a 2003 DLSE opinion letter, which is addressed in the Hernandez case. DLSE opinion letters are viewed as void regulations to the extent that they announce rules that aren't supported by other case law. There's no case law that supports a rule that's mentioned in passing in that case that if you are acting as a delivery driver, your time is compensable. Okay. Appellant makes the argument that something that because of all these forms where no one made any election, that you being from Shepard Mullen would be apoplectic with fear over that fact and that it means something. What's your response to that? I don't. Well, first of all, there was different regions. Only one of the regions had the form that had this checkbox he talks about. Other forms just had you adopted that you signed up for the program. And the policy itself of the program says it's voluntary and says you can quit any time you want. I believe at footnote 20. So as you're going through this, forgive me for interrupting, but as you're going through this, what's important to me is to show that everybody was given notice that the program is optional. Yes, because everybody has to. I think when they walk with their feet, I understand what choice they're making. So as you're going through the evidence, if you could keep that in mind, that's going to be my focus. I don't have the site in front of me, but there's the generalized Home Start policy that everyone sees and acknowledges that says it's a voluntary program. So where's the record cited about what everybody sees that program? That's what I'm trying to get at as you're going through the record there. While I go pull that, I would also like to refer you, connected to that, footnote 20 of our brief, which cites the records 724, 775, and 776. It's evidence that just in Santa Barbara, 30% of the people were not on Home Start. They were on what they call Office Start. No, there is a record. There is a record. I thought I would remember seeing it. Yeah, and there's record that generally speaking. But that's a different record than the question. No, no, it is, it is. I just wanted to connect it to before I forgot while I was looking at this. In our facts, we set forth how the program was set up, and there is a. . . It seems to me, sir, that just whether a box is checked or not checked, as I said, as long as people know that it's optional and they're doing it, it seems to me they're voting with their feet. But I'm not trying to be sneaky here. No, I don't think you're trying to be sneaky at all. Person by person, is there something that shows that the routine practice is to lay this out when people were onboarding? Yes, when they're onboarding. This is covered at pages 6 to 9 of our brief. If there's nothing else, then I've got that. So are there people on the program that didn't check a box? In one of the regions, because there used to be three separate regions, and they all got consolidated. There was the Santa Barbara region, there was the Orange County region, and there was the San Diego region. In the Santa Barbara and possibly the Orange County region, they had a supplemental form you also signed where you checked a box, I elect home start or I elect office start. We provided all the ones that we still had records of because this was signed years ago, and they're paper records. And there's some that have one checked, some that have the other checked, and some that have neither checked. In fact, in Plaintiff's case, he never checked a box. He just didn't check it on that form. He signed it, and the form says it's a voluntary program, but he didn't check the box, I elect home start. But I asked him at his deposition, did anybody ever coerce you to do this? And he said no. And we have evidence that people aren't doing it. I mean, that was the key thing in Alcantara. The reason they lost summary judgment, the defendant lost in that case, is because there was evidence that every single person was on the equivalent of home start and that there was some arguable coercion. At least two of the judges, it was a split decision, thought there was evidence in the record that it was coercive. There's nothing here. There's no evidence of coercion. Is there a signature for each employee of the recognizing the home start form? I mean, never mind checking the boxes, but indicating receipt. Yes. I think that's in the record. And of all the declarations they were attaching, one of the declarations in the record has various forms attached. And there's also just all these declarations from witnesses saying that they understood it was voluntary and they were told about it. So that's evidence, too. Sorry. It doesn't go to what I'm really getting at. I'm trying to find something in the record, and I just look back at the highlighted pages of the brief you just mentioned. I'm just trying to find something. I think Judge Chen's question goes to this. Okay. Where it tells us that whether somebody checked the box or signed the form or otherwise, just verifying that part of a routine practice was to give folks notice of this program. I think everybody was provided with the home start guidelines. I know. You keep saying that. I guess I'm missing what I'm missing. Where's the record site? I'm just asking for the record site, sir. Okay. That's a fair question. Unfortunately, I didn't have that exact site right here. Okay. Fair enough. But it's in that section. If you give me one second. Well, I don't want to take your time. If those are the pages, I've got those pages. At footnote 26, the home start agreement document plaintiff signed sets forth some of the basic home start rules, including the following statement, and it talks about it. And I believe in that same document, at footnote 27, which refers to pages 779 and 800 of the record, it says the plaintiff signed a second document titled Home Start Selection Option Statement, which reaffirmed that whether to be on Home Start or Office Start is voluntarily chosen. That's the part I know. I'm just looking to somebody to show me that everybody got that form, everybody got that, knows there's a routine practice to give it to them as part of the orientation or something. That's all I'm looking for. The only evidence there is of that that's in the record is we submitted a declaration that showed a collection of all these various forms. Okay, I see. That's all I have. Thank you. I appreciate it, and I didn't mean to belabor it. No, no, that's totally fine. I should be clear. So really, the only other point I guess I'd raise is there seems to be an argument on either side that I think expands this notion about federal and California law being different to almost the sense that California is some kind of bizarro world where whatever the federal standard is, California is the opposite. And that's not the law. I mean, it's true California is often more protective, and California has expressed their desire to be more protective in certain ways, and it manifests itself in wage orders or in language in the statutes. There's nothing whatsoever that does on this suffered-and-permit test that suggests California intended to differ. The reference to – Well, I would say yes. You could pretty much assume I'm an author of the pink book for California employment law, and California generally, if you're going to be a betting person, will be more protective than the federal courts. Yes, and I agree with that, but they put in those changes. There's still case law, and I think even the California Supreme Court has recognized that. The starting point, though, because often a lot of these California laws started off as adopting the FLSA and just have been changed over time, and that's one of the points they made in Morillion. I guess the very last thing, then, since I have three minutes to go. In the Augustus decision, I really think that's off point. Augustus is another control case. The notion there was that there's control concept in the rest period law. You have to be relieved of control, kind of similar to the same notion of if you're under control, you're still on duty, and they held that security guards who could be called back were not really off duty, so they were effectively still under control. We've already established that on the control prong, the plaintiff loses as a matter of Alcantar and just as a matter of going back to the Morillion case. There's no control here because they had the option, and the record is there's been no fact disputed or no evidence of a dispute that people had the option not to participate in this program. And, again, the actual Home Start policy says that any time people can drop out, you could one day decide to just drive your truck to the depot and leave it there and go home in your car. Your opponent mischaracterizes Augustus when he says that it rejected the overt exertion. It doesn't address that concept at all. It addresses the concept of what does it mean to truly have a rest period for a security guard, and the notion was security guards, if they could be called back at any time, the whole notion of being a security guard is to be like jump in to address an emergency. So, effectively, by being on a radio that can be called back at any time, they're still under control and, therefore, not on a rest period. It has nothing to do with whether you have to exert to meet the suffragette permit prong. It's not even a case about hours worked. It's a case about rest periods. If we were to accept appellant's suffragette permit work definition, would that mean, then, that anyone who carried their work equipment, say, for example, police officers carrying their weapons or their badges, that would require compensation for hours worked under California law? If there was no exertion requirement and it was simply that you brought some piece of equipment that you used in your job with you on your commute, it would, and it would go further. I brought this pen with me to court. This pen I used to take notes. That is a tool of my work. Everybody brings iPhones everywhere they go they use at work. It basically would be an exception that swallowed the rule. So, does the evidence in this record show anything besides transporting equipment that was already in their vehicles? None. Any time they spent taking the equipment on or off the vehicle was compensable. That was paid time. The only time we're talking about here is from they do their last duty in the field. They do no further work other than driving their car home. The equipment stays on the vehicle overnight. They never take it off the vehicle when they get home. There's no delivering of anything, and it's just basically driving home, and it's true. So that would mean no matter what they carried, even if it was heavy equipment, so long as they were compensated for the time of loading and unloading, if they had to carry heavy equipment home, it's still no overt exertion, and therefore there would never be any compensation for that. I don't want to come up with any situation under the sun I could ever think of, but certainly for carrying the kind of cargo that you do as just part of using in your job, your tools and equipment. I'm just trying to see whether there's a logical limit. Maybe if you had to carry a double-wide. I'm not sure why that actually would make a difference. I know there's some case law where people had to actually operate heavy equipment and drive it somewhere that they said it was different. So I don't think it matters. It only matters if you as the employee are required to do something more than just drive. All right. I think your time has expired. Thank you very much. My colleagues have questions. No, thank you. Thank you. Thank you. I think that Morelian is very clear. I get the idea that where California may be silent, you will look to the federal law, but this is one area where Morelian went out of its way to make clear when you're dealing with drive time. You have the Portal to Portal Act. It's rejected. The Employer Commuter Flexibility Act, it's rejected. And that's why you end up getting to the issue of overt exertion, because Congress said we're not going to allow this drive time to be compensable, so you've got to have the overt exertion. Augustus does identify three areas. I'm not saying they reject overt exertion. They say that's amongst the three. Except for the permit would mean carrying the pen. The police officer, you know, with his or her service resolver and badges, that that would be separate. Well, the issue is delivery, transporting delivery. So here you have modems. You have the cable boxes. They're actually taking it one place to install in your home. My pen, you know, if I go to the customer, my pen, I'm not leaving my pen. I'm not delivering my pen. So what are your clients doing in that last, what are they doing with the heavy equipment? They're not loading it, unloading it. They're just transporting it, right? Well, it's got to get from one place to the other. That's delivery. And if we just looked at, generally speaking, was taking that and bringing it to somebody's house to place it in there, would that be work? Yes, it would be work. It's delivering. But I know I'm running out of time. I wanted to add one thing. One of the issues also is duty, okay? When you're on the Home Start program and you finish your day, you clock out, at that point, you don't get a decision about whether I'm going to commute home in my own truck. I'm going to do, you have a truck and you have a duty, and the duty is set forth in ER-283, which is the Home Start, and also in, pardon me, ER-470-0. The driver of a company vehicle is responsible for the following. Parking only in appropriate locations and parking spaces. So at the end of the day, when you're at that last customer, you have a vehicle. You're not done. You have a duty. You have a responsibility. And Home Start's responsibility says you have to park that truck in a location specific and appropriate to the company, which is at your home under the Home Start program. So you're not done. That's your obligation. It's your responsibility. And no one here can argue they don't have that responsibility because there isn't somebody waiting. I think we're aware of that. So you're going over time. Unless my colleagues have any additional questions, that will, I'm going to call time on you. Any, all right. Thank you. That will conclude our argument. Thank you both for your helpful arguments in this matter. This matter will stand submitted.
judges: Callahan, Christen, Chen